FREDERICK HARDY, BY HIS NEXT FRIEND, EDMUND I. ADAMS v. FELIX L. TESH AND PINE HALL BRICK & PIPE COMPANY, AND H. K. SAUNDERS

— AND —

DAVID HARDY, BY HIS NEXT FRIEND, EDMUND I. ADAMS v. FELIX L. TESH AND PINE HALL BRICK & PIPE COMPANY, AND H. K. SAUNDERS

— AND —

JAMES HARDY, BY HIS NEXT FRIEND, EDMUND I. ADAMS v. FELIX L. TESH AND PINE HALL BRICK & PIPE COMPANY, AND H. K. SAUNDERS

No. 6921SC260

(Filed 18 June 1969)

**Automobiles §§ 47, 57— intersection accident — nonsuit — plaintiff's evidence contradicted by physical facts**

In an action for personal injuries received in a collision at a T-intersection, the trial court properly allowed defendant's motion for nonsuit where plaintiff's only evidence of actionable negligence by defendant, that defendant drove his automobile from a servient highway into the path of the automobile in which plaintiff was riding on the dominant highway, is in irreconcilable conflict with the uncontradicted physical facts established by plaintiff's evidence which place the point of impact on the servient highway and corroborate testimony by defendant, which was a part of plaintiff's evidence, that his automobile was stopped on the servient highway pursuant to a stop sign at the intersection when the automobile in which plaintiff rode skidded into it.

APPEAL by plaintiffs from *Armstrong, J.,* 6 January 1969 Session, FORSYTH County Superior Court.

The three cases were consolidated for trial. The parties stipulated that only the appeal in the case of David Hardy (David) would be perfected, and it was agreed that the decision would be binding and conclusive with regard to the cases of Frederick Hardy (Frederick) and James Hardy (James).

The cases arose out of an automobile collision on 9 January 1965 about 5:10 p.m. in the City of Winston-Salem. Two automobiles were involved, a 1964 Ford automobile owned by the defendant H. K. Saunders (Saunders) and driven by Edd Hardy, Jr., (Edd) and a 1965 Pontiac automobile leased by the defendant Pine Hall Brick & Pipe Company (Pine Hall) and driven by the defendant Felix L. Tesh (Tesh).

The three plaintiffs were the minor children of Edd, and they were riding in the Ford automobile with him. David, who was fourteen years of age, was riding in the front seat next to the door, while Frederick, who was five years of age, was riding in the front seat between Edd and David. James was twelve years of age and was riding in the back seat by himself.

Robinhood Road (Robinhood) and Shoreland Road (Shoreland) were paved, hard-surfaced streets and were approximately twenty-seven feet wide. Robinhood, which ran in a general north-south direction, was upgrade from the point where it crossed Silas Creek Parkway as it went southerly towards the intersection with Shoreland. Shoreland ran in a general east-west direction and intersected Robinhood from the west. It did not cross Robinhood and thereby formed a T-intersection. The maximum speed limit on both streets was thirty-five miles per hour. Traffic on Shoreland was controlled by a stop sign. Therefore, Robinhood was the dominant road and Shoreland was the servient road.

Edd was driving the Ford automobile in a southerly direction on Robinhood and Tesh was driving the Pontiac automobile in an easterly direction on Shoreland. The two vehicles collided at the T-intersection and all three of the Hardy children were injured.

At the close of the plaintiffs' evidence, the trial court entered an order declaring a mistrial as to Saunders and continuing the cases against him for the remainder of the court session. The trial court sustained motions for judgment as of involuntary nonsuit and entered a judgment to that effect as to Tesh and Pine Hall. The plaintiffs thereupon excepted and assigned as error the action of the trial court in granting Tesh's motion and in entering the judgment of involuntary nonsuit as to Tesh.

*Randolph and Drum by Clyde C. Randolph, Jr., for plaintiff appellants.*

*Deal, Hutchins & Minor by John M. Minor and William K. Davis for defendant Tesh appellee.*

CAMPBELL, J.

The appeal presents only the question of whether "the evidence offered by [David], considered in the light most favorable to [him], was sufficient to warrant submission thereof to the jury as to the alleged actionable negligence of" Tesh. *Jones v. Schaffer,* 252 N.C. 368, 114 S.E. 2d 105.

David alleged that his injuries were caused by the joint and concurrent negligence of the two drivers. He alleged that Tesh drove at an excessive speed, failed to stop for a stop sign and to yield the right of way, failed to keep a proper lookout and failed to have the Pontiac automobile under proper control. He alleged that Edd drove at an excessive speed, failed to keep a proper lookout, failed to keep the Ford automobile under proper control, failed to drive on the right half of Robinhood and "instead left the highway and entered into the intersecting street, in violation of G.S. 20-147." He further alleged that Edd "changed the course of travel of the vehicle which he was driving into the intersecting road upon which the automobile of . . . Tesh was stopped and did so in such a manner as to cause his vehicle to go into the left side of Shoreland Road and crash into the automobile driven by . . . Tesh in violation of G.S. 20-153(a)".

With regard to the collision itself, the plaintiffs offered their own testimony and the testimony of Edd, Tesh and L. N. Ivester, the investigating police officer.

James testified that he was talking at the time of the collision and that

> "when [Edd] came up to the top of the hill, he applied the brakes right quick and that is all we heard — the squeaking tires — and my head — I flew over the seat and hit the dashboard and knocked out my teeth.
>
> I did not see the other car at any time before this collision. . . ."

Frederick testified:

> "I can't exactly remember nothing about this accident. . . . I don't remember where I rode in the car. I don't remember anything about the accident itself."

David testified:

"As to what I remember about the accident and the events lead-
ing up to it; as we was on our way, we was going along past the
street and everything, and when we got down there about Robin-
hood Road, me and my brother was carrying on a conversation,
and we just talked like brothers do, and mostly we was talking
about the trip, and all of a sudden I heard the wheels and things
begin to slide on the car, and I turned around and I seen the car
out there in the street — a quick glance is all I could get. Re-
garding whether or not I saw the car we hit, before the collision:
I turned around, I got a quick glance at it, but I couldn't see it
because it happened so quick I just barely could see it. As to
whether or not I saw where the car was right before we hit:
when I seen the car it was approaching the street. I turned
around, and all I know, my head or something, some part of my
face hit the dashboard of the car, some part of the front of the
car somewhere. . . ."

On direct examination by plaintiffs' counsel, Tesh testified:

"Just preceding this accident, I pulled up to the intersection,
stopped, looked to the right and there was nothing coming. I
heard tires screeching, I turned to the left and the Hardy car
was approaching. It skidded into the left front of my automobile
and knocked it around at a 90-degree angle approximately. His
car hit mine at my left front wheel, damaging the side up as far
as the door back of the wheel and then the grille to the front of
the wheel."

On cross-examination Tesh testified:

"I pulled up and stopped on Shoreland Road in response to the
stop sign which was there. When I came to a stop, the front of
my car was 18 inches to 2 feet back into Shoreland Road from
the edge of Robinhood Road as it crosses over Shoreland Road.
My car was at a complete stop. I looked to my right, which
mean I was looking in towards town, which is the direction in-
dicated on the blackboard diagram as south. There was no traffic
going out to the north on Robinhood. The noise I heard of tires
screeching came from my left, and I turned to my left. At that
point I observed the car driven by Mr. Hardy; it was about 80
feet from me, skidding toward me, and as it approached me it
came in a broadside condition, ran off of the Robinhood Road
into Shoreland Road and struck me. . . .

. . . .

. . . I have an opinion satisfactory to myself that the speed to the Hardy car when I first observed it and as it came towards me was 45 to 50 miles an hour. . . ."

Edd testified:

"As to what happened as I approached this intersection leading up to the time of the accident: when I crossed Silas Creek down there I was coming up the hill and all at once this car just come out in the road and I applied brakes and I hit, and that's the only thing I remember. As I approached this intersection before the accident happened, other than the car that I hit, I also saw a car that was meeting me and one was in front of me. The car that was in front of me had got by the intersection and one was meeting me.

Before the collision, the car that I hit was coming from my right on the intersecting street, coming into Robinhood Road. I don't know where it hit in the intersection there, exactly."

On cross-examination by Saunders, Edd testified:

"When I approached Shoreland Road, coming up to it I just seed [*sic*] the car coming on out, and I applied brakes and I hit. That is all I remember: I applied brakes and I hit. I saw the car coming out Shoreland Road onto Robinhood Road. I saw the front of that car coming on out into Robinhood Road and I applied the brakes. I just jammed the brakes on. As far as remembering the car skidding at that time, it happened so quick. . . . After I applied the brakes, as far as observing the Pontiac automobile driven by Mr. Tesh then, I just observed — I tried to hold it and it hit and that is all I remember. I don't remember trying to turn the wheel or nothing."

Police Officer Ivester testified that he investigated the accident and that when he arrived he observed the Ford automobile in the middle of and sitting sideways across Robinhood, with the front pointed in a general northwesterly direction. No part of it was in Shoreland. The Pontiac automobile was sitting on the southwest corner of Shoreland and Robinhood, with the front pointed in a southeasterly direction. The rear portion of the Pontiac automobile was off the street, but the front was one or two feet on Robinhood. He testified that he observed tire marks and that these

". . . tire marks had started on Robinhood and went off the pavement and came into Shoreland, and the tire marks stopped approximately 3 feet from the south curb line of Shoreland, 4

feet west of Robinhood, and the cars were at that position shown on the diagram when I arrived. . . .

. . . By saying '4 feet west of Robinhood' I am talking about 4 feet into Shoreland Drive. There was a gouge mark. . . . That gouge mark led up to the left front wheel of the Hardy car."

He testified that by gouge mark he meant something that had dug into the pavement; this gouge mark started inside of Shoreland and then led up to the Ford automobile; and the left front tire of the Ford automobile was partly off of the rim. The Pontiac automobile was 36 feet from where the tire marks ended and the gouge mark appeared in the pavement. He further testified:

"The gouge mark was 4 feet west of the curb line of Robinhood Road and 21 feet south of the north curb line of Shoreland. . . ."

The evidence, when taken in the light strongest for the plaintiffs, reveals that, as the Ford automobile approached the intersection, Edd, according to his testimony, saw the Pontiac "coming out Shoreland" and "saw the front of that car coming on out into Robinhood"; Edd "jammed the brakes on", but the two vehicles collided. The Ford automobile came to rest "sitting right out in the middle of Robinhood" and "[n]o part of [the Ford] was extending into Shoreland". The Pontiac automobile, which was knocked 36 feet and which turned a 90-degree angle, came to rest on the southwest corner of Shoreland and Robinhood with the front pointing in a general southeasterly direction and with the front extending into Robinhood for 1 or 2 feet. The left front and right front fenders of the Ford automobile were damaged and the left front tire was punctured and partially off the rim. The left front fender of the Pontiac automobile was damaged. There were tire marks extending for a distance of 135 feet. These marks started on Robinhood, went off the pavement, came into Shoreland and stopped at a point approximately 3 feet from the south curb line of Shoreland and 4 feet west of the westerly curb line of Robinhood. There was also a gouge mark located 4 feet west of the western curb line of Robinhood and 21 feet south of the north curb line of Shoreland, and this gouge mark led up to the left front tire of the Ford automobile.

The only evidence of actionable negligence on the part of Tesh was the testimony of Edd to the effect that he saw the Pontiac "coming out Shoreland" and "into Robinhood". However, this testimony "is in irreconcilable conflict with [the] physical facts [*i.e.*, the tire

marks and gouge marks] established by plaintiff's uncontradicted evidence." *Jones v. Schaffer, supra.* This uncontradicted evidence places the point of impact on Shoreland and not on Robinhood and corroborates the testimony of Tesh, which was part of the plaintiffs' evidence.

> " 'As a general rule, evidence which is inherently impossible or in conflict with indisputable physical facts . . . is not sufficient to take the case to the jury, and in case of such inherently impossible evidence, the trial court has the duty of taking the case from the jury.' . . . It is noted: 'The rule that a nonsuit should be directed, if the physical facts disprove the plaintiff's case, is inapplicable if there is a substantial conflict in the evidence tending to prove the physical facts.' . . . Here, the relevant physical facts are established by plaintiff's uncontradicted evidence." *Jones v. Schaffer, supra.*

The judgment of involuntary nonsuit as to Tesh was properly entered.

Affirmed.

BROCK and MORRIS, JJ., concur.