BOBBY LEE MOORE v. DR. JOYCE REYNOLDS

No. 8221SC831

(Filed 5 July 1983)

**1. Evidence § 50 — medical opinion testimony properly admitted**

   The trial court properly allowed the video tape testimony of a medical doctor who, in response to a question on cross-examination, answered that after review of defendant's deposition and the medical report, he felt the treatment rendered by defendant was appropriate. Plaintiff did not inform the court of his objection to the question prior to trial, as provided in G.S. 8-81, the medical expert was allowed to testify without objection prior to the opinion question that he had reviewed the X-ray reports and read the emergency room records and defendant's deposition, and after the objected testimony, the medical expert repeated his opinion that the treatment was appropriate in response to a hypothetical question to which there was no objection.

**2. Physicians, Surgeons and Allied Professions § 17.3 — failure to properly diagnose shoulder dislocation — sufficiency of evidence for malpractice**

   The evidence was insufficient to establish medical malpractice on the part of a doctor who treated plaintiff and failed to discover a shoulder dislocation where the evidence tended to show that as a result of an injury, a large knot

formed on plaintiff's shoulder, but he continued to work; two days later he went to the emergency room and was examined by a woman; an X-ray was taken of his shoulder while he was in a horizontal position; the defendant informed plaintiff that blood deposits had formed in his shoulder; she gave him a prescription to dissolve the blood deposits, recommended he use a heating pad and advised him that he could return to work; the plaintiff consulted another physician several weeks later, and after having an X-ray taken in a vertical position, the new physician discovered that plaintiff had a dislocated collarbone and performed surgery.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 25 March 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 19 May 1983.

This action involves a medical malpractice claim brought by plaintiff against defendant-physician for negligent treatment rendered by defendant in the Forsyth Memorial Hospital on 19 February 1977. Plaintiff appeals from judgment granting defendant's motion for a directed verdict.

*Lewis and Bowden by Michael J. Lewis and Teresa G. Bowden for plaintiff appellant.*

*Bell, Davis & Pitt by William Kearns Davis for defendant appellee.*

BRASWELL, Judge.

[1]  Plaintiff first argues that the trial court erred in admitting testimony of the medical expert witness on cross-examination in response to a question containing facts unsupported by the evidence. Dr. Robert Underdal, an orthopedic surgeon, treated plaintiff and performed surgery on him after his accident. Dr. Underdal testified by means of a video tape deposition. After Dr. Underdal had testified extensively on direct examination, he was asked this question by defense counsel on cross-examination:

"Q. All right. Dr. Underdal, based upon the deposition of Dr. Reynolds and the emergency room record and the X-rays and the X-ray report, do you have an opinion, satisfactory to yourself, as to whether or not the treatment rendered by Dr. Reynolds was in accord with the standard and accepted medical practice and procedures in emergency rooms in Winston-Salem and similar communities?"

Dr. Underdal answered that after review of defendant's deposition and the medical report, he felt the treatment rendered by defendant was appropriate. Plaintiff points out that the hospital records were not introduced into evidence until the direct examination of defendant, which occurred after the doctor's testimony, and that defendant's deposition was never introduced into evidence.

The record shows that plaintiff offered into evidence the two depositions of Dr. Underdal in their entirety. It does not appear from the record that plaintiff informed the court of his objection to the question prior to trial, as provided in G.S. 8-81. It was particularly important that prior objection be made in this case since it was a video tape deposition and an objection would have to be edited out so the jury would not hear it. In addition, Dr. Underdal was allowed to testify without objection prior to the opinion question that he had reviewed the X-ray reports and read the emergency room records and defendant's deposition. Further, the record shows that after the objected testimony, Dr. Underdal repeated his opinion that the treatment was appropriate in response to a hypothetical question to which there was no objection. The admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character. *State v. Campbell*, 296 N.C. 394, 250 S.E. 2d 228 (1979); *Shelton v. R.R.*, 193 N.C. 670, 139 S.E. 232 (1927); 1 Brandis on North Carolina Evidence § 30 (1982).

Some of this problem arises solely because of the nature of the video tape deposition, since at the time of the depositions, defense counsel could not ask Dr. Underdal if he had heard Dr. Reynolds' testimony at trial. Plaintiff decided when to introduce the hospital records, and the order of evidence which he chose should not prevent the expert witness from testifying that he based his opinion on a review of the medical records and deposition. Finally, plaintiff was not prejudiced by admission of this testimony since the case was not decided by a jury. We find no merit to this assignment of error.

[2] Plaintiff next contends that the court erred in granting defendant's motion for a directed verdict. A motion for a directed verdict under Rule 50(a) of the North Carolina Rules of Civil Procedure presents the question of whether the evidence was suffi-

cient to entitle the plaintiff to have a jury pass on it. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). The question before this Court is the same as was before the trial court: whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury. *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 272 S.E. 2d 357 (1980). In a negligence case, the evidence, taken in the light most favorable to plaintiff, must tend to support all essential elements of actionable negligence. *Id.*

Pursuant to G.S. 90-21.12, the standard of proof necessary to establish medical malpractice is as follows:

> "In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action."

In malpractice cases, the plaintiff must show by testimony from a qualified expert "that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the same or similar communities *and* that defendant's treatment proximately caused plaintiff's injury." *Tripp v. Pate*, 49 N.C. App. 329, 332, 271 S.E. 2d 407, 409 (1980); *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978).

Applying these principles to the evidence presented at trial, we find that plaintiff's evidence tended to show the following. Plaintiff was injured on the job on 17 February 1977. As a result of the injury, a large knot formed on his shoulder, but plaintiff continued to work. Two days later plaintiff went to the emergency room at Forsyth Memorial Hospital. His initial examination was conducted by a woman in a white uniform. An X-ray was then taken of his shoulder while he was in a horizontal position. Dr. Reynolds, the defendant, informed plaintiff that blood deposits had formed in his shoulder. She gave him a prescription to

dissolve the blood deposits, recommended he use a heating pad and advised him that he could return to work. Plaintiff continued to experience severe pain and weeks later consulted Dr. Underdal, an orthopedic surgeon. Dr. Underdal ordered a stress X-ray in which the patient remains in a vertical position. He discovered that plaintiff had a dislocated collarbone and performed surgery on plaintiff on 14 April 1977. The operation was unsuccessful, and Dr. Underdal performed additional surgery on 10 April 1978. Plaintiff continued to have limited use of his arm, pain and sleeplessness and was unable to perform his job to the same extent he had prior to the accident.

Dr. Underdal stated that if an orthopedic surgeon had seen plaintiff in the emergency room, he would have recommended that plaintiff be admitted to the hospital and that surgery be performed the following day. If this treatment had been performed, plaintiff would probably have a lesser degree of disability than he has and the second operation would not have been necessary.

In response to plaintiff's hypothetical questions, Dr. Underdal stated that he felt the treatment and examination of plaintiff deviated from generally accepted medical practice in Winston-Salem because the initial examination should have been conducted by a physician and because the type of X-ray used was improper. However, he admitted on cross-examination that his answers depended upon the facts given in the hypothetical questions. Plaintiff presented mere speculation that he was initially examined by a nurse rather than a physician. Plaintiff called defendant as an adverse witness for the limited purpose of introducing the emergency room records. Her testimony indicated that she initially examined plaintiff, that she personally took his history, requested the X-rays, made the diagnosis and ordered treatment. The hospital records were entirely in her handwriting. The hospital records were introduced into evidence by plaintiff, and there has been no question raised as to their authenticity. Plaintiff's testimony that he did not see defendant before the X-rays were taken conflicts with the uncontradicted physical evidence that defendant wrote the results of her examination of plaintiff and ordered that X-rays be taken. In such a case, the undisputed physical facts control. *State v. Wilson*, 293 N.C. 47, 235 S.E. 2d 219 (1977); *Jones v. Schaffer*, 252 N.C. 368, 114 S.E. 2d 105 (1960).

Defendant stated that she believed plaintiff had contusion of the right shoulder and that she never suspected that he had a dislocated shoulder. Dr. Underdal stated that the treatment performed by defendant was sufficient for contusion. He also stated that in some cases, a standard X-ray would reveal dislocation. He concluded that defendant's treatment of plaintiff was not inappropriate. Since plaintiff called defendant to testify as his own witness in order to prove his case-in-chief, he cannot complain when her testimony fails to do so. *Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 186 S.E. 2d 198 (1972).

We find, as did Judge Wood, that plaintiff's evidence failed to establish negligence by Dr. Reynolds and failed to show that any action by her was a proximate cause of any injury to plaintiff. Plaintiff failed to show through expert testimony that defendant failed to exercise due care in her treatment of plaintiff or to use her best judgment in advising the course of treatment. Plaintiff merely speculated that his initial examination was conducted by a nurse but he admitted that he did not know who the person was or her professional capacity. Plaintiff presented no evidence that another emergency room physician who conducted an examination of plaintiff and read the X-rays would have diagnosed the injury different from that done by defendant. He failed to prove through expert testimony that the treatment administered by defendant violated the standard of medical care in the community and that such treatment proximately caused injury to plaintiff. *Ballenger v. Crowell, supra.* Evidence which raises only a conjecture of medical malpractice should not be submitted to the jury. *Hart v. Warren*, 46 N.C. App. 672, 266 S.E. 2d 53, *disc. rev. denied*, 301 N.C. 89 (1980).

Judgment granting a directed verdict for defendant is

Affirmed.

Judges ARNOLD and WEBB concur.