RALEIGH-DURHAM AIRPORT AUTHORITY v. DAVID WILLIAM KING AND WIFE, EMMA J. KING; CAROLINA POWER & LIGHT COMPANY; ROBERT D. HOLLEMAN, TRUSTEE; FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF DURHAM, N. C.; THE PROP AND RUDDER, INC.; AND COUNTY OF WAKE

No. 8410SC851

(Filed 4 June 1985)

1. **Eminent Domain § 6.2— airport expansion—testimony that land values in area chilled by proposed expansion**

    In a condemnation action arising from an airport expansion, the trial court did not err by admitting expert testimony that growth in the area had been chilled by the proposed airport expansion. Plaintiff objected to the testimony of two of defendants' experts but not the first; moreover, it was perfectly relevant to allow defendants' expert witnesses to describe the growth and market movement in the general area surrounding the condemned property and the testimony was that the proposed condemnation had chilled growth in the area, not that it had directly chilled market values.

2. **Eminent Domain § 6.7— airport expansion—highest and best use without cloud of condemnation**

    In an action to determine compensation for the condemnation of defendants' property for airport expansion, the court did not err by allowing defendants' expert to testify to the property's highest and best use if it had not been under a cloud of condemnation. G.S. 40A-65(a) prohibits the valuation of the property reflecting any decrease due to the "reasonable likelihood that the property would be acquired" in a condemnation proceeding. G.S. 48-65(c).

3. **Eminent Domain § 6.4— airport expansion—rental income from airport tenants—evidence of fair market value**

In a condemnation action arising from the expansion of an airport, the trial court did not commit prejudicial error by admitting evidence concerning the airport's rental income from airport service and commercial tenants as a proper means for the expert witness to determine the fair market value of the condemned property. Rentals of space inside the airport established the maximum rent that could be charged in the area, the availability of that space directly affected the amount of rent that could be charged outside the terminal, the evidence was not offered as comparable sales, and the witness's opinion of fair market value was not based primarily on this information.

4. **Eminent Domain § 6.5— airport expansion—capitalization of hypothetical income from hypothetical improvements**

In an action to determine compensation for the taking of defendants' land in an airport expansion, the trial court did not err by admitting expert opinion of the fair market value of defendants' property based on capitalization of hypothetical income from hypothetical improvements to the property. It was not error to allow the witness in explaining how he arrived at his figure for the fair market value of the property to "suppose" a reasonable rental value of the property "if properly developed"; the concept of "highest and best use" requires an expert to determine what the subject's fair market value would "realistically" be if the owner were "hypothetically" allowed to adopt his property to its most advantageous and valuable use.

APPEAL by plaintiff from *Brewer, Judge.* Judgment entered 2 May 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 2 April 1985.

*Nye, Mitchell & Jarvis by Charles B. Nye and Jerry L. Jarvis for plaintiff appellant.*

*Thorp, Fuller & Slifkin by William L. Thorp and Anne R. Slifkin for defendant appellees.*

COZORT, Judge.

In this condemnation action, the plaintiff deposited the sum of $116,550.00 as estimated just compensation for the appropriation of the defendants' property for airport expansion. The case was tried on the issue of just compensation and the jury returned a verdict in the amount of $260,000.00 for the defendants. The plaintiff appeals, seeking a new trial on this issue. Our review of the record and plaintiff's contentions reveal no commission of prejudicial error at trial. The facts follow.

The property at issue is a two-acre tract with 295.5 feet fronting the west side of State Road 1002 or Airport Road. Improvements included the defendants' home, a restaurant and country store combination with three gas pumps, and several small outbuildings. The defendants, David and Emma King, ran the grocery store/gas station and restaurant themselves until 1977. From that time until their land was taken by the Airport Authority, the Kings leased their commercial facility. During its last years of operation, the business grossed $325,000.00 to $350,000.00 per year.

At trial, the defendants presented three expert witnesses who testified to the property's fair market value. The experts' opinions differed with regard to the property's highest and best use, and their opinions as to the property's fair market value including improvements were: $281,000.00, $260,900.00, and $294,835.00.

The plaintiff's two witnesses placed the value of the property at $133,800.00 and $134,900.00.

On appeal, the plaintiff argues that the trial court committed prejudicial error by allowing certain evidence offered by the defendants to establish the fair market value of their property.

[1] The plaintiff's first assignment of error specifically objects to the trial court's admission into evidence expert testimony that market values in the project area had been chilled as a result of the proposed airport expansion. We hold the trial judge did not commit prejudicial error by allowing the testimony.

The defendants called three expert witnesses. Each witness was asked to describe the general growth and development of the area within the past ten to twenty years. The plaintiff at trial objected to expert witness Wallace Kaufman's testimony that "long-standing announcements" by the airport of its plans to expand had dampened the growth of the township containing the airport, differing from the high growth experienced by the surrounding townships in the Research Triangle Park. The plaintiff also objected to the question put to the third testifying expert, Jean Hunt, which asked how long the "cloud of condemnation" had affected the growth and development of this general area.

We overrule the plaintiff's assignment of error on two grounds. In the first place, it was perfectly relevant to allow the defendants' expert witnesses to describe the growth and market movement in the general area surrounding the condemned property. Their testimony was, in effect, that the proposed condemnation had chilled the growth in the area, not that the proposed condemnation had directly chilled market values.

However, we further note that the plaintiff's objections were untimely. We hold that the plaintiff has waived the benefit of its objections by failing to object during the first expert's testimony of the same import. The plaintiff's objections were first lodged during the testimony of Wallace Kaufman and later during the testimony of Jean Hunt. However, Thomas Anderson, the first defense expert to testify, described, without objection from the plaintiff, the general growth of the area surrounding the defendants' property during the last twenty years. In explaining why he believed there had been a decrease in the population of the area around the airport in comparison to the increase in the other areas surrounding it, Mr. Anderson opined:

> [T]he decrease in this area was caused by the expansion plans announced by the airport, had a chilling effect on the market and that investors were uncertain as to what would be happening in this corridor, and built just on the perimeter and stayed out of the way of the possible condemnation by the airport.

The plaintiff did not object to Anderson's reference to the "chilling effect" the airport's proposed condemnation had had on the area's growth and in turn on the area's property values. "The admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *Moore v. Reynolds*, 63 N.C. App. 160, 162, 303 S.E. 2d 839, 840 (1983). The plaintiff's failure to object to the first admission of "chilling effect" evidence and its failure to show prejudice by the admission of the later objected-to testimony leads us to the conclusion that this assignment of error is without merit, and it is, therefore, overruled.

[2] Within this same assignment of error, the plaintiff further argues that the trial court erred in allowing Wallace Kaufman to testify to the value the defendants' property would have had at

the time of its taking if it had not been subjected to the threat of condemnation. In other words, according to the plaintiff, Kaufman was improperly permitted to testify to the highest and best use of the condemned property based on "an open market" as if the property had not been under the "cloud of condemnation." We again fail to see how the admission of this evidence was prejudicial error.

G.S. 40A-65(a) states that the value of the property taken shall not reflect any increase or decrease in value before the date of valuation that is caused by

(i) the proposed improvement or project for which the property is taken; (ii) the reasonable likelihood that the property would be acquired for that improvement or project; or (iii) the condemnation proceeding in which the property is taken.

Under G.S. 40A-65(c), however, a decrease in the property's value before the date of valuation which is caused by physical deterioration of the property within the reasonable control of the property owner and by his unjustified neglect may be considered in determining the condemned property's value.

In the present case, the "cloud" over the area of the defendants' property formed in the first place because of the airport's announcements of its plans to expand. Airport Director John Brantley testified that for twenty to twenty-two years the airport has been involved in an expansion project. He stated that because the 1968 bond referendum received a lot of publicity "landowners in the area have certainly known that the airport was contemplating expansion." This fact according to expert witnesses dampened the growth in the area and in turn its property values. However, G.S. 40A-65(a) prohibits the value of the property to reflect any decrease due to the "reasonable likelihood that the property would be acquired" in a condemnation proceeding. Thus, Kaufman's valuation of the defendants' property, considering its highest and best use, quite correctly did not take into account the decrease in the property's value due to the airport's long-range condemnation plans. Kaufman clearly explained: "I'm appraising the fair market value of the property without the consideration of any effect of the expansion of the airport . . . discount[ing] any effect of the expansion of the airport on either decreasing or increasing the value of the property."

Since a property-owner cannot capitalize under the statute on any increase in the property's value due to the reasonable likelihood that it will be acquired, the condemnor likewise cannot take advantage of any resulting decrease in the property due to the threat of condemnation. Kaufman's testimony to the property's highest and best use as if it had not been under a cloud of condemnation was proper. We hold the trial court did not err in the admission of this evidence.

[3] The plaintiff next argues that the trial court improperly admitted evidence of rent charged and income derived by the Airport Authority from non-comparable property. During the trial the defendants sought to elicit detailed information relating to rental income derived by the Airport Authority from airport service and commercial tenants through the testimony of expert witness, Wallace Kaufman, who had reviewed the deposition of Airport Director John Brantley which contained the desired financial data. Upon the plaintiff's objection, the trial court considered the proffered testimony in the absence of the jury. After conducting a preliminary inquiry as to the purpose for which the evidence was being offered and after ascertaining that the evidence was not offered as a type of comparable but for the stated purpose of demonstrating the comparative cost and availability of property in the general vicinity, the trial court overruled the plaintiff's objection and stated:

> Well, I am not at this point receiving it into evidence as comparable. . . . I am receiving it into evidence solely for the purpose of showing the availability and/or cost of locations within the airport for the purpose of determining whether property outside the airport would be attractive for commercial purposes because of either the lack of space available in the airport for similar types of businesses or the relative cost within the airport of similar types of businesses.

The plaintiff argues that evidence of rental rates charged and income derived by the airport from non-comparable property both inside and outside the terminal buildings was inadmissible for any purpose. We disagree. Kaufman did not rely on these rents as "comparable sales." The plaintiff in its brief admits that there was "no contention or showing by the defendants that such properties were comparable."

Moreover, Kaufman did not base his opinion of the fair market value of the defendants' property primarily on this rental information. According to Kaufman, the airport was the "principal market maker" in the area, affecting property values and commercial viability of land in the vicinity of the airport. Airport rentals of space inside the terminal, because of the desirable location, established the maximum rent that could be charged in the area. Also, the availability of that space directly affected the amount of rent that could be charged outside the terminal. Thus, Kaufman's use of airport rentals allowed him to appraise the defendants' property within the context of the commercial and economic realities of the area. We hold that the trial court did not commit prejudicial error in admitting evidence concerning the airport's rental income on the basis that it was a proper means for the expert witness to determine a fair market value of the condemned property. We also agree with the defendants that the argument in plaintiff's brief does not deal with the capitalization of these rentals and therefore this portion of their assignment of error should be abandoned under Rule 28 of our Rules of Appellate Procedure.

[4] Finally, the plaintiff claims that the trial court committed reversible error in admitting expert opinion of the fair market value of the defendants' property based upon capitalization of *hypothetical* income from *hypothetical* improvements to the property. The plaintiff's objection was lodged during the following portion of Kaufman's testimony.

Q. You mentioned using the income from property to determine the value of the property itself. What rental would be required to capitalize the King property to the value that the fair market value you've placed on it?

A. Well, on the whole property?

Q. Yeah.

A. Well, it depends at what rate you're capitalizing, but if I'm using 10 percent rate, we're talking about twenty-eight thousand dollars a year total rental to the owner of the land.

Q. That would be for—all of the businesses on the two acres of land?

A. That would be for the whole piece of land, yes.

Q. And do you have an opinion satisfactory to yourself as to whether or not that is a realistic rental according to the highest and best use of the Kings' property if properly developed?

MR. JARVIS: Objection.

COURT: Overruled.

A. Yes. I think that would be a realistic rental for that kind of commercial property.

Initially, we note that plaintiff's objection comes too late. In any event, however, Kaufman testified that a rental value of $28,000.00 per year was a realistic rental value for the defendants' property with regard to its highest and best use. The concept of "highest and best use" requires an expert to determine what the subject property's fair market value would "realistically" be if the owner were "hypothetically" allowed to adapt his property to its most advantageous and valuable use. 27 Am. Jur. 2d, *Eminent Domain*, Sec. 280 (1966). *See also State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972), *affirmed per curiam*, 286 N.C. 331, 210 S.E. 2d 260 (1974). Therefore, we hold it was not error for the trial court to allow Kaufman in explaining his opinion on how he arrived at his figure for the fair market value of the defendants' property to "suppose" what a realistic rental value of the property might be "if properly developed."

Furthermore, Kaufman stated that his opinion as to the fair market value of the condemned property was based upon actual improvements, market demand for commercial retail space in the area, and specific comparable sales. He further testified that in his opinion the fair market value of the property was $281,000.00. The plaintiff again did not object. Without expressing an opinion as to whether the capitalization of hypothetical income is a proper method of valuation, we hold that in the context of this case Kaufman's expert testimony was properly received.

For the foregoing reasons, we hold that the trial court committed no prejudicial error.

No error.

Judges ARNOLD and PHILLIPS concur.