STATE OF NORTH CAROLINA v. MORRIS ROBINSON.

(Filed 13 December, 1967.)

1. **Homicide § 20—**

Evidence in this case held sufficient to be submitted to the jury on the issue of defendant's guilt of murder in the second degree.

2. **Criminal Law § 85—**

Where a defendant takes the stand as a witness, he is subject to cross-examination as to convictions for prior criminal offenses for the purpose of impeachment.

3. **Same—**

Where defendant, on cross-examination, states positively that his criminal record consists of only two convictions, the State may question defendant further and may properly elicit from him, for purposes of impeachment, that he had also been convicted of other offenses, subject, however, to the qualification that had defendant denied the additional convictions the denial could not be contradicted.

4. **Criminal Law § 163—**

An assignment of error to a portion of the charge containing a number of propositions must fail if the charge is correct as to any one or more of them.

APPEAL by defendant from *Froneberger, J.,* 6 February 1967 Special Criminal Session of MECKLENBURG. *Certiorari* allowed 20 September 1967.

Defendant was tried and convicted upon a bill of indictment which charged that he did unlawfully, willfully, feloniously, and with malice, kill and murder Richard N. Adams. The State's evidence tended to show:

On Saturday, 22 October 1966, at about 12:45 a.m., 250 persons were at the Hi-Fi Country Club in Charlotte, where a band was playing. Richard N. Adams was standing beside the air conditioner and William Chisholm, the operator of the club, was standing about 12 feet from Adams. Chisholm observed defendant cross the room, walk up to Adams and, without a word, shoot him in the left chest. As a result of the bullet wound, Adams died from a massive hemorrhage. Chisholm, who had seen Adams do nothing, grabbed defendant and asked why he shot Adams. Defendant, without replying, broke away from him and ran toward the door. As Chisholm pursued him two Charlotte policemen, R. E. Simmons and T. C. Barret, who also worked as security officers at the Hi-Fi Club, came through the door. Chisholm told them to arrest defendant, that he had just shot a man. The two officers took defendant into custody and removed from his right front pocket a .22 caliber pistol containing one spent bullet. After the arrest, a woman, who falsely rep-

resented herself to be defendant's wife, demanded permission to talk to him. She asked defendant what had happened, and he replied that he had to shoot someone. In answer to her inquiry why he had shot "this person," defendant "said that this person had taken $30.00 from him and he was not letting any person take his money and get away with it."

Defendant's evidence tended to show that at the time of the shooting Adams was at a table with four or five others. Ten minutes before the shooting Adams had been sitting there cleaning his nails with a knife. Defendant, testifying in his own behalf, gave this version of the shooting: He went over to Adams' table and asked for money which Adams owed him. Adams said that he was not going to give defendant any more money, and they argued about it 5-10 minutes. Defendant then left and visited several other tables, passing and repassing Adams' table a number of times. When Adams told him to quit walking by his table, defendant passed on without comment. He returned in a short time, however, to tell Adams that he had paid his entrance fee and that he would walk through the aisle as much as he liked. Defendant then renewed his demands for money. Adams again refused to pay him and ordered him away from the table. Defendant leaned across the table toward Adams and the two cursed each other for two or three minutes during which time Adams remained seated. However, "he got mad and that is when he went in his pocket. . . . He did not get quite out of his chair, at that particular moment. When he brought his hand out of his pocket he started up. I saw a knife in his hand. . . . The pistol came from my pocket. I went into my pocket to get the pistol because he went to his pocket. . . . I know his reputation, it is violent. I was standing up at the time that I fired the pistol. After the shooting . . . I did not move for . . . a few seconds. I then stepped over Adams, I came back down the aisle. . . . The officers stopped me at the front door."

The jury found defendant guilty of murder in the second degree as charged in the bill of indictment. From the prison sentence imposed, he appealed.

*T. W. Bruton, Attorney General; Ralph Moody, Deputy Attorney General, for the State.*
*Peter H. Gerns for defendant appellant.*

PER CURIAM. The statement of facts discloses the sufficiency of the evidence to withstand defendant's motion for nonsuit, and a careful consideration of each of defendant's assignments of error discloses no prejudicial error.

On cross-examination, after defendant had stated positively that his criminal record consisted of only one conviction of larceny and one conviction of assault, over his objection, the solicitor elicited from him the admission that he had also been convicted of store-breaking and larceny, larceny of an automobile, hit and run, operating a motor vehicle without an operator's license, larceny of automobile tires, trespass and larceny, and simple assault. Defendant's contention that the State was bound by his first statement that he had been convicted only of larceny and assault is without merit. The solicitor had the right "to sift the witness." *State v. King,* 224 N.C. 329, 30 S.E. 2d 230. For the purpose of impeachment, defendant was subject to cross-examination as to convictions for prior criminal offenses. *State v. Norkett,* 269 N.C. 679, 153 S.E. 2d 362. Had defendant denied that he had been convicted of the additional charges when the solicitor questioned him about them, his denial could not have been contradicted by the record of his convictions, *State v. King, supra;* Stansbury, N. C. Evidence § 48 (2d Ed., 1963). Defendant, however, admitted the convictions.

Defendant's assignment of error 14-A, which is based upon a broad side exception, involves three full pages of the charge dealing with the law of self-defense: An assignment of error must be based upon an exception which points out some specific part of the charge as erroneous, and an exception to a portion of a charge embracing a number of propositions is insufficient if anyone of the propositions is correct. *Doss v. Sewell,* 257 N.C. 404, 125 S.E. 2d 899; *State v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608. We have, however, considered the entire charge. In it we find no error which, in our opinion, could reasonably be supposed to have prejudiced defendant.

In the trial, we find

No error.