STATE OF NORTH CAROLINA v. LOUIS RALEIGH COFFEY

No. 3

(Filed 2 March 1976)

1. Criminal Law § 163— exceptions to the charge

   An alleged error in the charge of the court to the jury must be specified, both as to alleged error in the charge actually given and as to an alleged failure to give an instruction required by law.

2. Criminal Law § 165— objection to argument of counsel

   An objection to argument of counsel must be made at the time of argument so as to give the court an opportunity to correct the transgression, if any, and any such impropriety in the argument is waived by waiting until after the verdict to enter the objection.

---

State v. Coffey

---

**3. Criminal Law §§ 102, 165— jury argument not supported by evidence — failure to object in apt time**

Even if the district attorney in a first degree burglary case went beyond the actual testimony of witnesses in his jury argument that defendant "turned on the oven in the kitchen and piled papers and rags on the table with the intention of burning down the house after he had taken what he wanted," the prejudicial effect of any overstatement could have been corrected by an instruction by the court, and defendant waived objection to the argument by failing to object thereto at the time of the argument.

**4. Criminal Law § 66— lineup identification — advice as to right to counsel — failure to object to testimony — invited error**

The appellate court cannot conclude that defendant was not advised of his right to counsel at a lineup at which a burglary victim identified defendant where defendant failed to object to the victim's in-court identification of defendant or to testimony concerning the lineup identification, the State introduced no evidence of the lineup identification until after defendant developed this fact on cross-examination of the victim, and no *voir dire* was held before the evidence was introduced.

**5. Burglary and Unlawful Breakings § 3— burglary indictment — description of property stolen**

It is not necessary that an indictment for burglary describe the property stolen by the burglar or property which he intended to steal.

**6. Burglary and Unlawful Breakings § 3; Indictment and Warrant § 9— burglary indictment — description of premises**

An indictment for burglary charging defendant with breaking and entering "in the county aforesaid, the dwelling house of one Doris Matheny there situate, and then and there actually occupied by one Doris Matheny" describes the location of the dwelling at which the burglary was committed with sufficient clarity to survive a motion to quash.

APPEAL by defendant from *Friday, J.,* at the 10 November 1975 Session of RUTHERFORD.

Having been found guilty of burglary in the first degree, the defendant was sentenced to imprisonment for life. The indictment charges:

"That Louis Raleigh Coffey late of the County of Rutherford on the 27th day of January, 1975, about the hour of 3 A.M. in the night of the same day, with force and arms, at and in the county aforesaid, the dwelling house of one Doris Matheny there situate, and then and there actually occupied by one Doris Matheny feloniously and burglariously did break and enter, with intent, the goods and chattels of the said Doris Matheny in the said

dwelling house then and there being, then and there feloniously and burglariously to steal, take and carry away Goods, U. S. Currency and personal property of Doris Matheny against the peace and dignity of the State."

The evidence for the State, summarized, was as follows:

Mrs. Doris Matheny testified: She lived with her two small children in a house on Old Caroleen Road, Forest City. On 27 January 1975, she and her children were asleep in the house, she having locked the doors before retiring. In the early morning hours she awakened and found two persons in her bedroom. One of them pulled an object from his waistline and advanced upon her. He cut her hand and struck her, knocking her unconscious. When she regained consciousness, the two intruders were "rambling through the drawers and talking."

Mrs. Matheny identified the defendant in court as one of the two persons in the room. (There was no objection to her in-court identification of the defendant.)

Mrs. Matheny further testified: She summoned the police (presumably immediately after the intruders' departure) and they arrived at her house at 3:15 A.M. She was carried to the hospital for medical treatment and returned to her home the next day. She observed "the drawers had been rambled through," some money removed from her purse and the stereo pulled out from the wall. Her son's watch had been taken. When she retired on the evening preceding the intrusion, she turned off the lights in the house, but, when she was awakened, there was a light "on somewhere" and there was light coming through her bedroom windows from a neighbor's outside light. She could see well enough to identify the intruder, who had "not a beard but hair" on his face. The next time she saw this man he was in a police lineup, in which there were eight persons, several of whom had long hair and a beard. While the intruders were in her room, she observed a "vile odor." She was not able to identify the other intruder. The defendant lives "up the road" from Mrs. Matheny and the police did not aid her in making her identification of him.

Detective Laughter of the Rutherford County Sheriff's Department testified that when he arrived at Mrs. Matheny's residence at about 3:15 A.M. on 27 January 1975, she was in bed, her gown was torn, she was crying and there were cuts and bruises about her face and body. The glass in the back door of

her residence was broken next to the doorknob. The drawers in a chest in the dining room of the house and the dresser doors were open. Her pocketbook was on the cabinet in the kitchen with the billfold, checkbook and other papers lying beside it. The oven was turned on.

Detective Laughter further testified: When the defendant "came in" at the police lineup, Mrs. Matheny turned white and went limp so that the officer had to support her. She identified the defendant as the intruder she had observed in her bedroom. The defendant then had long hair, sideburns and a mustache. The lineup was conducted at 1:40 P.M. on 27 January 1975. The defendant lives on the same road as Mrs. Matheny and about one-fourth to one-half a mile from her. All of the men in the lineup had long hair and one of them had a beard. The defendant was found by the officers with his two brothers in their home about 6:30 A.M. on 27 January 1975. One brother, Joe Coffey, had a "bad body odor about him."

James Boyce, a member of the County Sheriff's Department, testified that he is a qualified handler of bloodhounds. He was called to the Matheny residence and there put his bloodhound on the trail. The dog led him to the defendant's home. The dog "went by Lawson's house next door to the Coffey house and he stopped him but the dog wanted to keep going."

The defendant, testifying in his own behalf, said that he, his two brothers and his mother were in bed at their home from shortly after midnight until the arrival of the officers about 6:30 A.M. on 27 January 1975, that he knew nothing about any breaking and entering of Mrs. Matheny's home and did not know where she lived until after he was charged with the burglary.

The defendant's alibi was supported by the testimony of his mother and two brothers. The witnesses for the defendant testified to having seen in the neighborhood a stranger about the size of the defendant who had long hair and a beard.

Detective Laughter, on recall, testified that when he arrived at Mrs. Matheny's home following the burglary, she was "very hysterical" and described "the man in her bedroom as having a beard and the other one as having a strong foul odor about him." One of the other men in the police lineup was about the same height and weight as the defendant and had long hair and a beard, his hair being lighter than the defendant's

and being of two shades. The officers' search of the Coffey house did not reveal any of the items taken from Mrs. Matheny's home.

*Attorney General Rufus L. Edmisten and Associate Attorney Daniel C. Oakley for the State.*

*Robert G. Summey for defendant.*

LAKE, Justice.

The defendant's five assignments of error are:

(1) His motion to quash the bill of indictment should have been allowed because the indictment does not state sufficiently the location of the dwelling house alleged to have been burglarized or the property stolen therefrom;

(2) The defendant was not informed of his right to be represented by counsel when put in the lineup at which he was identified by Mrs. Matheny;

(3) In his argument to the jury, the District Attorney "argued facts which were not in evidence";

(4) "The entire judge's charge is * * * biased toward the State * * * thereby expressing an opinion of the court in both tone and content";

(5) The court improperly charged the jury on second degree burglary, though all of the evidence is to the effect that the building was actually occupied at the time of the breaking and entering.

No argument or citation of authority appears in the defendant's brief in support of Assignment No. 5. This assignment is, therefore, abandoned. Rule 28, Rules of Practice in the Supreme Court (old rules). See also, Rule 28a, Rules of Appellate Procedure (new rules), 287 N.C. 671, 741.

[1] Assignment of Error No. 4 is a broadside exception to the charge and is overruled. This Court has said repeatedly that an alleged error in the charge of the court to the jury must be specified, both as to alleged error in the charge actually given and as to an alleged failure to give an instruction required by the law. *State v. Crews,* 284 N.C. 427, 201 S.E. 2d 840 (1974); *State v. Robinson,* 272 N.C. 271, 158 S.E. 2d 23 (1967); *State v. Stantliff,* 240 N.C. 332, 82 S.E. 2d 84 (1954); *State v.*

*Peacock,* 236 N.C. 137, 72 S.E. 2d 612 (1952). Notwithstanding this well settled rule, due to the serious nature of the offense charged and of the sentence imposed, we have carefully considered the charge of the trial judge to the jury and we find therein no error prejudicial to the defendant. The charge includes a full and fair summary of the evidence introduced, both by the State and by the defendant, and a clear and impartial explanation of the principles of law applicable thereto.

[2] As to the defendant's Assignment of Error No. 3, the record shows that arguments of counsel were not recorded by the court reporter and no objection by the defendant to the argument of the District Attorney was interposed until after the jury returned its verdict, at which time the defendant made a motion for a new trial on the ground of the alleged improper argument by the District Attorney. The general rule is that an objection to argument of counsel must be made at the time of the argument, so as to give the court an opportunity to correct the transgression, if any, and any such impropriety in the argument is waived by waiting until after the verdict to enter the objection. As Justice Parker, later Chief Justice, said in *State v. Smith,* 240 N.C. 631, 83 S.E. 2d 656 (1954), "We have held in a long line of decisions that exception to improper remarks of counsel during the argument must be taken before verdict." An exception to that general rule is recognized in capital cases where the improper argument was so prejudicial in nature that, in the opinion of the court, no instruction by the trial court could have removed it from the minds of the jury had the objection been seasonably made. See: *State v. White,* 286 N.C. 395, 211 S.E. 2d 445 (1975) ; *State v. Smith, supra.* This exception to the general rule has no application here.

[3] It is apparent from the record that we have before us only a brief synopsis of the evidence. If we assume that the District Attorney went beyond the actual testimony of witnesses in his argument that the defendant "turned on the oven in the kitchen and piled papers and rags on the table with the intention of burning down the house after he had taken what he wanted," there is no reason to suppose that the prejudicial effect of any overstatement could not have been corrected by an instruction by the court had objection to the argument been made in due time. Furthermore, this is not a capital case.

[4] There is no merit in Assignment of Error No. 2. The record shows that Mrs. Matheny, the first witness for the State,

State v. Coffey

made an in-court identification of the defendant as one of the intruders into her home. There was no objection to this in-court identification and no request that the court conduct a voir dire examination to determine its independent origin. The State introduced no evidence of the identification of the defendant at the lineup until after the defendant had developed this fact on his cross-examination of Mrs. Matheny. There was no objection whatever to any testimony concerning the identification at the lineup and the record discloses no irregularity therein. In Stansbury's North Carolina Evidence (Brandis Revision), § 27, it is said: "A judge may always properly exclude inadmissible evidence, but ordinarily he is not required to do so in the absence of objection; and a failure to make an objection waives it. Evidence admitted without objection, though it should have been excluded had proper objection been made, is entitled to be considered for whatever probative value it may have."

Obviously, a defendant who, himself, injects incompetent evidence into the trial, may not urge its admission as ground for a new trial. In the present case, the record does not show whether or not the defendant was advised, prior to the lineup, of his right to have counsel present at the lineup. Only in his assignments of error, long after the trial was concluded, did the defendant assert that he was not so informed. The State in its exceptions to the defendant's statement of the case on appeal says: "No voir dire was ever requested before the evidence was introduced and if same had been requested it would have disclosed that the defendant was advised of his rights to have counsel present at the lineup but that he waived such rights." In this state of the record we cannot conclude that the defendant was not properly advised of his rights to counsel at the lineup.

[5] Finally, there is no merit in the defendant's Assignment of Error No. 1 which is directed to the denial of his motion to quash the bill of indictment for the reason that it does not describe the location of the dwelling at which the burglary was committed with sufficient clarity and does not describe "the property taken" sufficiently to identify it. It is obviously not necessary that an indictment for burglary describe the property stolen by the burglar. The crime of burglary in the first degree is complete when an occupied dwelling is broken and entered in the nighttime with the intent to commit larceny therein whether or not anything was actually stolen from the house. *State v.*

*Hooper,* 227 N.C. 633, 44 S.E. 2d 42 (1947) ; *State v. Allen,* 186 N.C. 302, 119 S.E. 504 (1923) ; *State v. McDaniel,* 60 N.C. 245 (1864). It is not required that the indictment describe the property which the defendant intended to steal, or that which he did steal. *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972).

**[6]**   It is true that an indictment for burglary is fatally defective if it fails to identify the premises broken and entered with sufficient certainty to enable the defendant to prepare his defense and to offer him protection from another prosecution for the same incident. *State v. Smith,* 267 N.C. 755, 148 S.E. 2d 844 (1966). The indictment in the present case charges that the defendant "in the county aforesaid [Rutherford], the dwelling house of one Doris Matheny there situate, and then and there actually occupied by one Doris Matheny * * * did break and enter" with the requisite intent. This is a sufficient description to withstand a motion to quash.

The present case is distinguishable from *State v. Smith, supra,* where an indictment charging the defendant with breaking and entering "a certain building occupied by one Chatham County Board of Education, a government corporation," was held fatally defective for failure to identify the premises sufficiently. It is a matter of common knowledge that a county board of education occupies more than one building in the county. In the present case, there is nothing to indicate Doris Matheny owned and actually occupied more than one dwelling house in Rutherford County. Prior to the commencement of his trial, the defendant knew that he was charged with burglarizing a dwelling on the same road as his own home and not more than a half a mile therefrom. Thus, he had ample information as to the location of the house to enable him to prepare his defense to the charge, which defense was that, at the time of the burglary, he was asleep in his own home.

No error.