STATE OF NORTH CAROLINA v. REGINALD WILSON

No. 106

(Filed 13 June 1977)

1. **Criminal Law § 104— motion for nonsuit—inherently incredible evidence**

   While ordinarily the credibility of witnesses and the weight to be given their testimony is exclusively a matter for the jury, this rule does not apply when the only testimony justifying submission of the case to the jury is inherently incredible and in conflict with the physical conditions established by the State's own evidence.

2. **Criminal Law § 66.1— identification of defendant—opportunity for observation**

   A burglary victim had a sufficient opportunity to observe defendant so as to render competent her in-court identification of defendant where defendant was within eight to ten feet of the victim; a kitchen light illuminated the bedroom of the victim's house where the victim saw defendant; the victim had seen defendant earlier that summer on the street and did not know his name but knew that he was a named person's son; the victim told her husband and an officer shortly after the crime that one of the burglars was the named person's son; the victim positively identified defendant at a pretrial photographic viewing; and her identification testimony was clear and unequivocal.

3. **Burglary and Unlawful Breakings § 1.1— burglary indictment—felony intended**

   While a burglary indictment must specify the particular felony which the defendant allegedly intended to commit, it is ordinarily sufficient to state the intended offense generally.

4. **Burglary and Unlawful Breakings §§ 1.1, 3.2— burglary indictment— intent to commit larceny—description and ownership of property**

   Where a burglary indictment alleged that defendant's ulterior intent was to commit larceny, the State was required to prove that intent at the time of the breaking and entering in order to make out the offense of burglary; however, there was no necessity to allege or prove that defendant intended to steal any particular item of property owned by any particular individual.

5. **Burglary and Unlawful Breakings § 1.1— burglary—commission of intended felony**

The actual commission of the intended felony is not essential to the crime of burglary.

6. **Burglary and Unlawful Breakings § 3.2— burglary—intent to commit larceny—description and ownership of property**

Allegation and proof in a burglary case that defendant intended to steal the goods and chattels of another located in the burglarized dwelling, *i.e.*, to commit the crime of larceny, were sufficient, and the additional allegation specifying an intent to steal a Schwinn 10-speed bicycle and proof concerning its ownership were surplusage and harmless.

7. **Criminal Law § 102.12— jury argument—punishment for first degree burglary**

Defense counsel properly informed the jury of the consequences of a conviction of first degree burglary and properly argued that, in light of those consequences, the jury should give the matter close attention and its most serious consideration.

8. **Criminal Law § 102.12— jury argument—punishment as part of substantive deliberations**

The trial court in a first degree burglary case properly excluded defense counsel's jury argument implying that identification of defendant was based on a fleeting view and that, while such a view may be sufficient to convict in some situations, it is inadequate to convict in this case because the punishment is so severe, since counsel may not ask the jury to consider punishment as part of its substantive deliberations.

9. **Criminal Law § 120— failure to instruct on punishment for burglary**

The trial court in a first degree burglary case did not err in failing to instruct the jury that upon conviction a sentence of life imprisonment would be imposed, since such an instruction may be given or withheld in the court's discretion, and the exercise of that discretion will not, absent abuse, be disturbed on appeal.

DEFENDANT appeals from judgment of *Browning, S.J.*, 27 September 1976 Criminal Session, PITT Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging that between 1 a.m. and 2 a.m. in the night of 13 July 1976, with force and arms, defendant feloniously and burglariously broke and entered the occupied dwelling house of Barbara White, 700-B Imperial Street, Greenville, North Carolina, with intent, feloniously, and burglariously, to steal, take and carry away the goods and chattels of Barbara White located in said dwelling house, specifically one Schwinn 10-speed bicycle.

Mrs. Barbara White testified that on 13 July 1976 she lived with her husband, Willie Andrew White, at 700-B Imperial Street in Greenville. This apartment consists of three rooms — a living room on the front, a bedroom in the middle and a kitchen on the back with a bath closed in on the porch. A front door leads to the living room and a back door leads out of the kitchen.

Mrs. White testified that she got off work at 10:30 p.m. on 13 July 1976 and, upon arriving home, prepared her clothing for the next day's work and then locked the doors. No windows were open—"they had been nailed down." Her husband was not at home and, according to custom, she left the kitchen light on and went to bed. Her husband owned a 10-speed Schwinn bicycle and when she went to bed it was parked on the living room floor. She awoke sometime during the night, about 1:00 or 1:30 a.m., and saw two men, one standing over her and the other with the bicycle pushing it toward the kitchen. She screamed and while the intruders ran out the back door, she ran out the front door. She did not recognize the man standing over her but earlier in the summer had seen the person who was pushing the bicycle. She said: "I didn't know his name, all I knew he was Sister Wilson's son, one of Sister Wilson's sons. He's not a personal friend of mine, but I knew Sister Wilson had a lot of children." Following a voir dire, she was permitted to identify defendant in court. She said he was wearing a black hat and old "railroadman-type" gloves. "The hat had rubber in the back of it and it had a cap-like bill with a piece across."

When her husband got home she told him one of the burglars was Sister Wilson's son and that she didn't know the other person. They called the police. An examination of the apartment disclosed that the kitchen window had been forced open. The screen had been taken off and was lying on the grass in the backyard beside the house.

Several days later Mrs. White made a photographic identification of defendant as the person in her house pushing the bicycle on the night in question. Mrs. White testified she based her in-court identification "on having seen the person in my house with the bicycle and nothing else I am fully satisfied that Reginald Wilson is the person that had the bicycle that night."

Willie Andrew White testified over objection that he owned the Schwinn 10-speed bicycle to which the bill of indictment refers and that he kept it in the living room of the apartment where he and Mrs. White lived. He said his wife told him when he arrived home that she recognized one of the burglars as Sister Wilson's boy. On the night of the burglary he and the officers checked the windows of the apartment and found the kitchen screen had been removed from the kitchen window.

Detective Joseph Tripp testified, among other things, that Mrs. White told him when he arrived at the scene on the night in question that one of the intruders "was one of the Wilson boys." He further testified that he showed Mrs. White six photographs of black males and that she selected Reginald Wilson's picture as the person who was pushing the bicycle through her bedroom on the night of 13 July 1976. Police Officer Linwood E. White testified to substantially the same thing.

Defendant offered no evidence.

The jury convicted defendant of burglary in the first degree and defendant was sentenced to life imprisonment. He appealed to the Supreme Court assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State of North Carolina.*

*Dallas Clark, Jr., court-appointed counsel for defendant appellant.*

HUSKINS, Justice.

Defendant moved to suppress his in-court identification by the prosecuting witness on the ground that its exclusion is required by the due process clause of the Federal Constitution. Denial of this motion constitutes defendant's first assignment of error.

It is proper to note at this point that G.S. 15A-974(1), pursuant to which defendant's motion is purportedly filed, mandates the suppression of evidence *only* when the evidence sought to be suppressed is obtained in violation of defendant's constitutional rights. Such is not the case here. Defendant candidly concedes in his brief that "there was no constitutional [sic]

out-of-court confrontation or any pretrial identification pro-
cedure suggestive and conducive to mistaken identification." De-
fendant confines his argument to the contention that Mrs. White
had no adequate opportunity to observe him, thus rendering her
testimony so weak and unreliable that it should have been ex-
cluded and nonsuit entered at the close of the State's evidence.
For that reason defendant argues that the court erroneously
admitted Mrs. White's in-court identification of him.

[1] While ordinarily the credibility of witnesses and the weight
to be given their testimony is exclusively a matter for the jury,
this rule does not apply when the only testimony justifying
submission of the case to the jury is inherently incredible and
in conflict with the physical conditions established by the State's
own evidence. *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902
(1967). Defendant seeks the benefit of this rule, thus requir-
ing an examination of the *Miller* decision.

In *Miller*, the Hall Oil Company building in Charlotte was
broken and entered by two or more men on the night of 28
September 1966 and a safe was damaged in an effort to force
it open. The exterior of the building was well lighted by street
lights, floodlights at the front and back, and spotlights attached
to the eaves. The building was 286 feet from a Texaco service
station with a vacant lot between. The only evidence tending
to identify defendant as one of the burglars was the testimony
of a 16-year-old witness who identified defendant in a lineup
as one of the persons he had seen at the scene of the crime. The
witness was never closer than 286 feet to a man he saw running
alongside the Hall Oil Company building. *The witness had never
seen the man theretofore* and testified he saw this man run once
in each direction, peep around the corner of the building and
look in the direction of the witness. The witness could not de-
scribe the man except to say that his clothes were dark. Held:
The uncontradicted testimony as to the physical facts was in-
sufficient to support the subsequent identification of defendant
with that degree of certainty which would justify submission
of the case to the jury. Our holding was based on the general
rule that evidence which is inherently impossible or in conflict
with indisputable physical facts or laws of nature is not suffi-
cient to take the case to the jury. *State v. Cox*, 289 N.C. 414,
222 S.E. 2d 246 (1976); *Jones v. Schaffer*, 252 N.C. 368, 114
S.E. 2d 105 (1960).

The holding in *Miller* has no application where, as here, "there is a reasonable possibility of observation sufficient to permit subsequent identification." *State v. Miller, supra.* In such event the credibility of the witness and the weight of his or her identification testimony is for the jury. *State v. Cox, supra; State v. Humphrey,* 261 N.C. 511, 135 S.E. 2d 214 (1964).

[2] Here, Mrs. White had an opportunity to view defendant who was within eight to ten feet of her. The kitchen light was illuminating the area where defendant was pushing the bicycle. She had seen defendant earlier that summer when both were meeting and passing on the street. She did not know his name but knew he was Sister Wilson's son. She told her husband when he came home a few minutes later that the man with the bicycle was Sister Wilson's son. She told Detective Tripp the same thing and positively identified defendant at a pretrial photographic viewing. The court found as a fact on a pretrial voir dire that she based her identification on the initial recognition of defendant as Sister Wilson's son when she saw him in her bedroom on the night in question. Her identification testimony is clear and unequivocal. Thus the record discloses plenary competent evidence, corroborated by the physical facts and by other witnesses, to support the findings of the trial judge. Such findings are conclusive when supported by competent evidence. *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972).

Defendant's argument goes only to the weight of Mrs. White's identification testimony and not to its competency. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant nonsuit. *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967); 4 N.C. Index 3d, Criminal Law § 104, and cases there cited. The identification testimony of Mrs. White was properly admitted. Defendant's first assignment challenging its competency is overruled.

Defendant next assigns as error the denial of his motion to strike the testimony of Mr. and Mrs. White concerning the ownership of the bicycle. He argues that the bill of indictment is fatally defective because it does not allege the ownership of the bicycle and therefore it was prejudicial error to allow proof of ownership without allegation. This constitutes defendant's second assignment.

We commence with the observation that defendant was not charged with larceny. Rather, he was charged with burglary in the first degree—breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein, *i.e.*, the felony of larceny. Felonious intent is an essential element of burglary which the State must allege and prove, "and the felonious intent proven, must be the felonious intent alleged. . . ." *State v. Jones*, 264 N.C. 134, 141 S.E. 2d 27 (1965).

[3, 4] In an indictment for burglary it is not sufficient to charge generally an intent to commit "a felony" in the dwelling house of another. "The particular felony which it is alleged the accused intended to commit must be specified. . . . The felony intended, however, need not be set out as fully and specifically as would be required in an indictment for the actual commission of said felony, where the State is relying only upon the charge of burglary. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal the goods and chattels of another then being in said dwelling-house, or to commit therein the crime of larceny, rape, or arson. [Citations omitted.]" *State v. Allen*, 186 N.C. 302, 119 S.E. 504 (1923); *accord, State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967).

The indictment attacked in the case before us reads as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Reginald Wilson, late of the County of Pitt on the 13th day of July 1976, about the hour of between 1:00 a.m. & 2:00 a.m. in the night of the same day, with force and arms, at and in the county aforesaid, the dwelling house of one Barbara White, 700B Imperial St. Greenville there situate, and then and there actually occupied by one Barbara White feloniously and burglariously did break and enter, with intent, the goods and chattels of the said Barbara White in the said dwelling house then and there being, then and there feloniously and burglariously to steal, take and carry away one (1) Schwinn 10 speed bicycle against the peace and dignity of the State."

We are of the opinion that this indictment meets the standards prescribed by the foregoing principles of law. Having specified defendant's ulterior intent, *i.e.*, the intent to commit larceny, the

State was required to prove that intent at the time of the breaking and entering in order to make out the offense of burglary. With respect to that offense, however, there was no necessity to allege or prove that defendant intended to steal any particular item of property owned by any particular individual.

[5] The actual commission of the intended felony, *i.e.*, larceny, is not essential to the crime of burglary. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974). "The crime of burglary is completed by the breaking and entering of the occupied dwelling of another, in the nighttime, with the requisite ulterior intent to commit the designated felony therein, even though, after entering the house, the accused abandons his intent through fear or because he is resisted." *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976); *accord, State v. Allen, supra.* Here, these principles were included in the trial judge's charge as follows:

> "So, I charge that if you find from the evidence and beyond a reasonable doubt that on or about July 13, 1976 Reginald Wilson removed the screen in the kitchen window and raised it and went through the window opening into Mr. and Mrs. White's sleeping apartment, without their consent, in the nighttime, intending at the time to commit larceny, and that . . . Mrs. Barbara White was in the apartment when he broke and entered, it would be your duty to return a verdict of guilty of burglary in the first degree. However, if you do not so find, or if you have a reasonable doubt as to any one of the seven things which I enumerated, it would be your duty to return a verdict of not guilty."

[6] Allegation and proof that defendant intended to steal the goods and chattels of another located in the burglarized dwelling, *i. e.*, to commit the crime of larceny, is sufficient. The additional allegation specifying the Schwinn bicycle and the proof concerning its ownership was surplusage and entirely harmless. Defendant's second assignment is overruled.

The record discloses that before any objection was interposed to defense counsel's argument to the jury, he had already made the following argument:

> "In this State, under General Statute 14-52, I want to read to you what the legislature has established as the punishment for burglary. 'Any person convicted of the

crime of burglary in the first degree, shall be imprisoned for life in the State's prison.' That means that this is about as important a thing, I submit and argue to you, as you are ever going to do. Because the way you rule depends exactly on what happens to Reginald Wilson for the rest of his life. He either walks out of the courtroom if you acquit him, or he goes to prison for his life. So I submit very earnestly and strongly that the duty that you have in this case is as high as you are ever going to have because very seldom do citizens have an opportunity to determine the lifetime of another citizen. And I agree furthermore with [the prosecutor] that the whole case boils down to Mrs. White's testimony."

Defense counsel then pointed to what he conceived to be the weakness in Mrs. White's identification testimony and continued his jury argument as follows:

"And she said from the time she closed her eyes that she did not thereafter see the people who were in the bed- room. That means, ladies and gentlemen, that she had an opportunity to view the people in the bedroom for a period, I suggest to you, well under five seconds . . . And what the State of North Carolina is asking you to do in this case is to send this defendant to prison for the rest of his life based on the testimony of Mrs.—"

At this point the prosecutor's objection was sustained and de- fense counsel continued in these words: "The statute has been read to you. And I am absolutely certain in my heart that you understand the seriousness with which you must treat this case."

At the close of the court's charge to the jury one juror asked: "Did you say we are not to consider possible punishment when we think of others?" After a consultation at the bench during which defense counsel requested the court to charge the jury that it "should be impressed with the seriousness of its duty in deliberating upon the case since its deliberations could result in life imprisonment should it reach a verdict of guilty," the court refused to give such charge and answered the juror's question as follows:

"Ma'am, in answer to your question, as best I can an- swer it, you are to base your verdict on the evidence as you heard it from the witness stand in this courtroom

State v. Wilson

and only on the evidence as you heard it. Punishment is a matter for the Court to apply to the case after the jury has ascertained the facts that speak the truth in the case."

Defendant contends the trial court erred (1) in sustaining the prosecutor's objection to the quoted portion of his jury argument relative to the punishment defendant would receive if found guilty and (2) in refusing to instruct the jury regarding the seriousness of its duty and the punishment which would result from a guilty verdict. This constitutes defendant's third assignment.

In *State v. Rhodes*, 275 N.C. 584, 169 S.E. 2d 846 (1969), we held that, except in capital cases, the presiding judge fixes the punishment for a convicted defendant within the limits provided by the applicable statute while the jury discharges its duty when it returns a verdict of guilty or not guilty. " . . . In the absence of some compelling reason which makes disclosure as to punishment necessary in order 'to keep the trial on an even keel' and to insure complete fairness to all parties, the trial judge should not inform the jurors as to punishment *in non-capital cases*. If information is requested he should refuse it and explain to them that punishment is totally irrelevant to the issue of guilt or innocence. When, however, such information is inadvertently given the error will be evaluated like any other." (Emphasis added.) *State v. Rhodes, supra; accord, State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973).

In *State v. Dillard*, 285 N.C. 72, 203 S.E. 2d 6 (1974), we held that defense counsel could not make an *argument* to the jury upon the question of the punishment to be imposed, that is, that he had no right to argue the question of punishment in the sense of attacking the validity, constitutionality, or propriety of the imposition of the death penalty provided by law. To like effect is *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974), in which Justice Branch, writing for the court, said:

"Counsel may, in his argument to the jury, in any case, read or state to the jury a statute or other rule of law relevant to such case, including the statutory provision fixing the punishment for the offense charged. [Citations omitted.] He may not, however, state the law incorrectly or read to the jury a statutory provision which has been declared unconstitutional. [Citations omitted.] Nor may

counsel argue to the jury that the law ought to be other-
wise, that the punishment provided thereby is too severe
and, therefore, the jury should find the defendant not guilty
of the offense charged but should find him guilty of a lesser
offense or acquit him entirely."

Based on the language of G.S. 84-14 that in jury trials "the
whole case as well of law as of fact may be argued to the jury,"
we held in *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553
(1976), that defense counsel had the right to inform the jury
that conviction would necessarily result in imposition of a life
sentence. There, Justice Exum, writing for the court, said:

> "It is proper for defendant to advise the jury of the
> possible consequence of imprisonment following conviction
> to encourage the jury to give the matter its close attention
> and to decide it only after due and careful considera-
> tion. . . . Whether the trial judge should tell the jury in a
> proper case that upon conviction a mandatory life sentence
> will be imposed is still an open question. It could hardly be
> error to do so."

[7] Applying these principles to defendant's first contention
we hold that the trial court did not err in excluding the con-
tested portion of defense counsel's jury argument. Both before
and after the excluded portion, counsel informed the jury of
the consequences of a conviction and stated that, in light of
those consequences, the jury should give the matter close atten-
tion and its most serious consideration. These statements were
in all respects proper. *State v. McMorris, supra.*

[8] In the contested portion, however, counsel gave his argu-
ment a different slant. There, counsel implied that identifica-
tion of the defendant was based on a fleeting view and that,
while such a view may be sufficient to convict in some situ-
ations, it is inadequate to convict in this case *because the
punishment is so severe.* Thus counsel was asking the jury to con-
sider the punishment as part of its substantive deliberations
and this he may not do. The trial judge correctly excluded that
portion of defendant's jury argument.

[9] By his second contention under this assignment, defend-
ant argues that the court erred in failing to instruct the jury
that it "should be impressed with the seriousness of its duty in
deliberating upon the case since its deliberations could result in

life imprisonment should it reach a verdict of guilty." We do not agree. The trial judge is *not required* to instruct the jury that upon conviction a sentence of life imprisonment will be imposed. *See State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977); *State v. McMorris, supra; State v. Rhodes, supra.* Such an instruction may be given. or withheld in his discretion and the exercise of that discretion will not, absent abuse, be disturbed on appeal. *State v. Bumper,* 275 N.C. 670, 170 S.E. 2d 457 (1969); *Welch v. Kearns,* 261 N.C. 171, 134 S.E. 2d 155 (1964). No abuse of discretion is shown. Defendant's third assignment of error is overruled.

Defendant's fourth assignment addressed to the charge is without merit and requires no discussion. When read contextually, the charge as a whole is free from prejudicial error.

Defendant's motion in arrest of judgment is based on the alleged insufficiency of the indictment argued under his second assignment of error. The question posed here was resolved against him there and deserves no further discussion. We hold the motion was properly denied.

Defendant's motion to set aside the verdict is addressed to the discretion of the trial court and refusal to grant it is not reviewable in the absence of abuse of discretion. *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960). Nothing presented shows abuse of discretion in this aspect of the trial.

Defendant having failed to show prejudicial error, the verdict and judgment must be upheld.

No error.