State v. Murphy

No error.

Judges WELLS and BECTON concur.

STATE OF NORTH CAROLINA v. FREDDY MURPHY

No. 8117SC1067

(Filed 20 April 1982)

**1. Robbery § 4.3— use of deadly weapon—sufficiency of evidence**
    The State's evidence was sufficient to show that defendant committed a robbery with a deadly weapon where one victim testified that she saw a weapon in defendant's right hand; the second victim on several occasions referred to the use of "a gun" by defendant; and there was evidence that defendant was seen walking toward the victim's home carrying a rifle.

**2. Criminal Law § 66.1— identity of defendant by sight—acquaintance with defendant—opportunity for observation**
    A robbery victim was sufficiently acquainted with defendant and sufficiently observed her assailant to permit her to identify defendant as her assailant based on "the sound of his voice and the size and shape of him."

**3. Criminal Law § 102.6— prosecutor's jury argument—comment on defendant's objection to confession**
    In an armed robbery case in which defense counsel argued to the jury that "the State has not introduced any statement or confession of the crime . . .," the district attorney's jury argument that "you don't have the statement to consider, ladies and gentlemen of the jury, because the defendant objected to it" did not constitute a gross impropriety which would require the trial court to intervene *ex mero motu.*

    Judge WHICHARD dissenting.

APPEAL by defendant from *Washington, Judge.* Judgments entered 7 May 1981 in Superior Court, CASWELL County. Heard in the Court of Appeals 9 March 1982.

Defendant appeals his conviction on two counts of armed robbery. At trial the evidence tended to show that on 19 December 1980, between 7:00 and 7:30 p.m., James Sherrill and his wife were at home watching television when they heard a knock at their door. Mr. Sherrill went to the door, and because he did not see anyone immediately, he stepped about a foot outside. At that time, an individual put a gun to his stomach and told him to back

into the house and turn off the light. The robber demanded guns and money and left with a small amount of money ($1.45) from Mrs. Sherrill's purse, and Mr. Sherrill's wallet containing only his food stamps.

Neither of the victims saw the robber's face because it was covered with something plastic. Mrs. Sherrill testified that he was wearing "a waist Army jacket that comes down about halfway of your legs" and that a "long thing covered up with a white slip . . . was pointed straight at my husband's stomach." The robber had another weapon in his right hand that "was a sawed-off looking like gun but it was short." After the robber left, Mrs. Sherrill told her husband that she believed the robber was the defendant, Freddy Murphy.

James Price and Philmore Gillespie testified that on the evening of 19 December 1980, they had seen the defendant in the vicinity of the Sherrill home carrying what seemed like a rifle under his arm. Defendant was wearing an Army jacket.

James Price's son testified that on the evening in question he was outside shooting basketball and spoke with defendant, who was at that time carrying a .22 rifle.

Defendant's witnesses also placed defendant in the vicinity of the Sherrill home on the evening of 19 December. William Murphy, defendant's brother, testified that sometime after 7:30 p.m. he arrived at his mother's house, located close to the Sherrill home, where he saw defendant. The two left for Danville.

*Attorney General Edmisten, by Assistant Attorney General Fred R. Gamin, for the State.*

*Ronald M. Price for defendant appellant.*

MARTIN (Harry C.), Judge.

[1] Defendant contends there was insufficient evidence that the crime was committed with a deadly weapon. Mrs. Sherrill testified that she saw a weapon in defendant's right hand. Defendant was seen walking toward the Sherrill home carrying a rifle. Mr. Sherrill testified, without objection, "that is when he [the defendant] pointed *a gun* in my stomach and told me to back up and I did. He told me to cut the light off and I did because *the*

*gun* was on me at the time. He told me to sit down and I did because *the gun* was still on me." (Emphasis ours.) Defendant's contention is without merit. *See State v. Thompson*, 297 N.C. 285, 254 S.E. 2d 526 (1979); *State v. Evans*, 25 N.C. App. 459, 213 S.E. 2d 389 (1975).

[2] Defendant further contends there was insufficient evidence that he was the person who committed the crime. We disagree. Mrs. Sherrill testified that she had seen or spoken with the defendant "every day or two" from August to December and that defendant had worked for the Sherrills as a day laborer and had helped them with their tobacco. The witness observed her assailant sufficiently to permit subsequent identification based on "the sound of his voice and the size and shape of him." Her credibility and the weight given to her identification testimony was properly for the jury. Defendant fails to show that the evidence of identification was inherently incredible. *State v. Wilson*, 293 N.C. 47, 235 S.E. 2d 219 (1977).

[3] During his final argument to the jury, defendant's counsel stated: "I argue and contend, ladies and gentlemen of the jury, that the State has not introduced any statement or confession of the crime there to bring before you for you to consider and say this is some other evidence. I have here where the defendant admitted to doing this. . . . You don't have that evidence before you to consider."

The district attorney, in his closing argument, responded: "Okay, and you don't have the statement to consider, ladies and gentlemen of the jury, because the defendant objected to it." It is defendant's contention that the trial court erred in allowing the district attorney to argue improper matters relating to suppressed evidence and defendant's failure to testify. Defendant did not object to the state's argument, and as a general rule, such failure constitutes waiver. *State v. Coffey*, 289 N.C. 431, 222 S.E. 2d 217 (1976). Moreover, defendant's counsel himself argued the matter of the suppressed evidence and, by implication, defendant's failure to testify; and it appears from the record that the trial court had apprised the jury of the matter of suppressed evidence prior to closing arguments. We find no evidence of gross impropriety upon the record before us that would require the trial court to intervene *ex mero motu*. *State v. Britt*, 288 N.C.

699, 220 S.E. 2d 283 (1975); *State v. Brown,* 39 N.C. App. 548, 251 S.E. 2d 706, *cert. denied,* 297 N.C. 302 (1979). The record does not support a finding of prejudicial error.

Defendant next contends that the trial court erred in commenting on defendant's failure to testify. The court's instructions were proper and in compliance with *State v. Baxter,* 285 N.C. 735, 208 S.E. 2d 696 (1974). Moreover, there is nothing in the record before us to suggest that the trial court erred in stating the applicable law or in its summary of the facts.

No error.

Judge MARTIN (Robert M.) concurs.

Judge WHICHARD dissents.

Judge WHICHARD dissenting.

I respectfully dissent from the majority's failure to find prejudicial error in the district attorney's closing argument. The pertinent facts are these:

Deputy Sheriff L. H. Hamlett testified on recall for the State that he talked with defendant the day following the robbery. Defense counsel then objected "to [defendant's] statement at this time," and the court excused the jury. On *voir dire* Hamlett testified to what defendant had told him. Defendant's statement was in the nature of an alibi and entirely exculpatory. It in no way implicated or tended to implicate him in the robbery with which he was charged.

When the jury returned, the court stated:

Members of the jury, during the course of the trial, the Court has sustained the objection to anyone saying what Freddy Murphy has said on this occasion, this is an objection to what the defendant is alleged to have said to the officer and the Court sustained what Freddy said on the 20th day of December, 1980.

Thereafter defense counsel stated in his closing argument to the jury:

State v. Murphy

Ladies and gentlemen of the jury, the best evidence that the State of North Carolina can put before you as to the crime and its commission of it and what went on in the house is what you remember as to what Mr. and Mrs. Sherrill testified to as they were there.

I argue and contend, ladies and gentlemen of the jury, that the State has not introduced any statement or confession of the crime there to bring before you for you to consider and say this is some other evidence. I have here where the defendant admitted to doing this. This is not a hard job at all if he says that he did, but you don't have that, ladies and gentlemen. You don't have that evidence before you to consider.

The district attorney then stated in his closing argument:

The defendant said there was no statement, talking about the evidence presented by the State, there was no statement made by the defendant for you to consider. No statement by the defendant for you to consider, that is what the defendant argued to you. Well, ladies and gentlemen of the jury, you remember Mr. Hamlett going to the stand last evening about fifteen of five and I asked him about talking with the defendant, Mr. Murphy, and did he talk with him. Yes, Saturday morning or Saturday afternoon, December the 20th, a statement by the defendant.

Okay, and you don't have the statement to consider, ladies and gentlemen of the jury, because the defendant objected to it. And then the defendant wanted to argue that we have not done our job, wanted to tell you that we have not done our job and brought in a statement for you to consider by the defendant. Well, there it was if he wanted you to consider it, ladies and gentlemen of the jury. If he wanted you to consider it, all he had to do was just be quiet.

The statement by defense counsel was entirely proper. There was in fact no confession in evidence. It is inaccurate to say, as does the majority opinion, that "defendant's counsel himself argued the matter of the suppressed evidence." Defense counsel's argument related to a confession, and the suppressed evidence was not a confession.

The statement by the district attorney, however, conveyed the inevitable impression that defendant had in fact confessed and his confession had been excluded due to some legal technicality. "The district attorney owes honesty and fervor to the State *and fairness to the defendant* in the performance of his duties as a prosecutor." *State v. Britt,* 288 N.C. 699, 710, 220 S.E. 2d 283, 290 (1975). (Emphasis supplied.) The argument suggesting that defendant had confessed when his excluded statement was in fact exculpatory rather than inculpatory was manifestly unfair to defendant. In light of the highly inconclusive nature of the identification evidence, the possibility that the jury convicted defendant by drawing the reasonable inference from this argument that defendant had confessed, when in fact his statement was exculpatory, is by no means remote. The likelihood of prejudice is thus considerable.

I recognize that absent objection the court may have been inadvertent to the district attorney's statement. The court has a duty, however, to see that a defendant's right to a fair trial is sustained. *Britt,* 288 N.C. at 710, 220 S.E. 2d at 290. If the impropriety here was not sufficiently "gross" to evoke *ex mero motu* corrective action, such impropriety is non-extant. The statement, especially in the context of inconclusive identification evidence, rendered defendant's trial manifestly unfair. I therefore vote for a trial *de novo.*