STATE OF NORTH CAROLINA v. MIQUEL CORRERRA MARION

No. COA96-437

(Filed 15 April 1997)

### 1. Evidence and Witnesses § 1301 (NCI4th)— drugs on person when arrested—in-custody statement—not under influence of drugs

Although defendant had drugs on his person at the time he was arrested for an unrelated incident, competent evidence supported the trial court's finding that defendant did not appear to be under the influence of drugs at the time he was interrogated by the police about a rape, which in turn supported the court's conclusions that defendant's waiver of his rights and statement were made voluntarily and understandingly, where the interrogating officer testified that he had no trouble understanding defendant, that defendant did not appear to be intoxicated, and that defendant walked and talked without difficulty, had no trouble following instructions or keeping his balance, and did not appear to be under the influence. The interrogating officer is not required to ask about recent drug use in order for a waiver to be voluntary in cases where drugs were previously found on the individual.

Am Jur 2d, Evidence §§ 866, 867.

### 2. Evidence and Witnesses § 1252 (NCI4th)— interrogation— attorney instructions—not invocation of right to attorney

In a prosecution for first-degree rape and kidnapping, the trial court properly denied defendant's motion to suppress his statement that was made during a police interrogation where

defendant stated that a specific attorney had instructed him not to turn himself in but defendant did not make an affirmative indication that the attorney was representing him, since this statement was not a request to have such attorney present during interrogation.

**Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 690, 692, 696, 902-910.**

**Duty to advise accused as to right to assistance of counsel. 3 ALR2d 1003.**

**Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.**

3. **Evidence and Witnesses § 404 (NCI4th)— darkness at crime scene—identification of defendant—victim's testimony not incredible**

A rape victim's identification of defendant was not inherently incredible and supported defendant's conviction of second-degree rape where the victim testified that, although it was dark when she was attacked by defendant, she was able to identify defendant because she was able to see him up close at the time of the attack. Defendant's contention that the light was insufficient to permit a proper identification goes to the weight and not the competency of the identification.

**Am Jur 2d, Evidence §§ 560-564.**

Appeal by defendant from judgments entered 29 September 1995 and order entered 3 October 1995 by Judge Sanford L. Steelman, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 January 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lorinzo L. Joyner, for the State.*

*Allen W. Boyer for defendant-appellant.*

LEWIS, Judge.

On 8 August 1994, defendant was indicted on charges of first degree rape and first degree kidnapping. At trial, defendant moved to suppress a statement he made to a police investigator. This motion was denied and defendant preserved an exception. The jury found

defendant guilty of second degree rape and first degree kidnapping. He was sentenced to thirty years for the second degree rape charge and judgment was arrested on the kidnapping charge. Defendant appeals.

At trial, the State's evidence tended to show that on 16 June 1994 around 10:30 p.m., the victim was walking the five blocks from Food Lion, where she worked as a cashier, to her home. After hearing someone yell to her, she looked back and saw a person walking toward her. She began walking faster, but the person ran up and grabbed her. Although she tried to push him away, he forced her to the other side of the street. He then pushed her down to the ground and held her there despite her tries to break free. After hitting the victim in the face three times, the attacker raped her. After protestations by the victim and further violent attacks, the attacker ran off. The victim testified that she had seen him once before when she and her mother had stopped to talk with him in the yard of his house, which was about two blocks from her own. She identified defendant as the man who had attacked her that night.

Investigator David Shelton, with the Charlotte-Mecklenburg Police Department, testified that he advised defendant of his rights and that defendant voluntarily waived them. He further testified that defendant then told him that he had consensual sex with the victim.

Defendant presented no evidence.

[1] On appeal, defendant contends that the trial court erred in denying his motion to suppress the statement he made to Investigator Shelton. He first maintains that since he was in jail for an unrelated incident at the time of Investigator Shelton's interrogation and had drugs on his person at the time of that arrest, the investigator should have inquired if he had recently taken any drugs.

Defendant cites no North Carolina authority for his contention that in order for a waiver to be voluntary in cases where drugs were previously found on the individual, the interrogating officer must first ask about recent drug use. The standard in North Carolina is whether or not, under the totality of the circumstances, the confession is made voluntarily. *State v. Medlin*, 333 N.C. 280, 294, 426 S.E.2d 402, 409 (1993). The inquiry to be conducted is whether the defendant is so impaired " 'as to be unconscious of the meaning of his words,' " not whether he or she has consumed drugs or alcohol. *See State v. McClure*, 280 N.C. 288, 290, 185 S.E.2d 693, 695 (1972) (quoting *State*

*v. Logner,* 266 N.C. 238, 145 S.E.2d 867 (1966)); *see also State v. Wilson,* 340 N.C. 720, 728-30, 459 S.E.2d 192, 197-98 (1995).

Therefore, our consideration is limited to a determination of whether the trial court's finding of fact that defendant did not appear to be under the influence is supported by competent evidence. *See State v. Lane,* 334 N.C. 148, 154, 431 S.E.2d 7, 10 (1993). We find that it is.

During the voir dire hearing, Investigator Shelton testified as follows:

Q: What efforts did you take to determine whether or not Mr. Marion understood what was going on, and might have been under the influence of those drugs when you spoke with him?

A: I made observation of his presence, and in conversation going from the jail during the procedures, leading up to the actual advising of his rights. I observed that his responses were clear. He appeared to be in complete control of his faculties. He had articulated an understanding of anything I stated to him in regards to procedures of going upstairs to do the strip search, and so forth.

Subsequently, the officer testified that he had no trouble understanding defendant, that defendant did not appear intoxicated, that he walked and talked without difficulty, had no trouble following instructions or keeping his balance, and gave responsive answers to questions. We hold that this is competent evidence which supports the trial court's finding that defendant did not appear to be under the influence which in turn supports its conclusion that defendant's statement was made "freely, voluntarily, and understandingly" and that his waiver was made "knowingly, intelligently, and voluntarily."

[2] Defendant also argues that the trial court erred in denying his motion to suppress because he invoked his right to an attorney prior to making the inculpatory statement. We disagree.

Investigator Shelton testified during the voir dire hearing that as they were leaving the jail to go to the Law Enforcement Center for questioning, defendant told him that an attorney, Jack Wolf, told him not to turn himself in. The Court asked whether defendant ever said that Mr. Wolf was representing him. The officer replied, "No. He just said Jack told him not to turn himself in." Defendant apparently contends that this was sufficient to constitute a request for an attorney during questioning or alternatively, that since defendant referred

specifically to an attorney by name, it was then incumbent upon the officer to closely question defendant about his desire to have that attorney present for the interrogation.

Once again, defendant's argument is without any North Carolina precedent and we will not legislate a rule that any time an attorney is mentioned by name in the presence of law enforcement officers, it must be considered a request to have an attorney present during questioning. While we agree there are no "magic words" which must be stated in order to invoke an individual's right to counsel, there must be some affirmative indication that the individual desires the help of an attorney during interrogation. *See State v. Torres*, 330 N.C. 517, 528, 412 S.E.2d 20, 26 (1992). We find no such indication here. Defendant simply mentioned that a specific attorney had told him not to turn himself in. Furthermore, when defendant did request the presence of a lawyer, approximately thirty minutes into the interrogation, Investigator Shelton ceased the conversation. We hold that competent evidence exists to support the trial court's finding that defendant did not invoke his right to counsel until the end of his interview with Investigator Shelton. Defendant's motion to suppress was properly denied.

[3] Finally, defendant contends that the trial court erred in denying his motion to dismiss since there was insufficient evidence that he committed the crimes charged. We hold there was more than sufficient evidence to sustain the trial court's ruling.

Defendant specifically argues that there was insufficient evidence that he was the perpetrator because the only evidence linking him to the crime is the victim's identification. Defendant maintains that this identification is insufficient because the poor lighting at the crime scene made an identification by the victim impossible. We disagree.

When there is " 'a reasonable possibility of observation sufficient to permit subsequent identification,' " the credibility of the witness and the weight of his or her identification is a jury issue. *State v. Wilson*, 293 N.C. 47, 52, 235 S.E.2d 219, 222 (1977) (quoting *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967)). However, a charge should not be submitted to the jury when the only testimony linking the defendant to the crime is "inherently incredible and in conflict with the physical conditions established by the State's own evidence." *Id.* at 51, 235 S.E.2d at 221.

**STATE v. MARION**

[126 N.C. App. 58 (1997)]

At trial, the victim provided the following relevant testimony:

Q: At this time did you—could you see the person?

A: Yes, sir.

Q: What kind of lighting was it like there?

A: Where we was, it was real dark.

Q: And how were you able to see the person?

A: We were close up.

Q: How close was this person to you when you could see him?

A: Face-to-face.

The victim also testified that at the time she saw her attacker's face, she knew she had seen him once before and that she was able to get a good look at him on that occasion.

We do not find the victim's identification inherently incredible since there was a reasonable possibility of sufficient observation. It is clear from the victim's testimony that although it was dark, she was able to see defendant because he was very close to her. Defendant's argument that the light was insufficient to permit a proper identification goes to the weight of the identification, not to its competency. *Cf. Wilson*, 293 N.C. at 52, 235 S.E.2d at 222 (reaching same conclusion where the defendant argued that the witness did not have adequate opportunity to observe him).

We conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges WALKER and MARTIN, MARK D. concur.